## The N. K. Fairbank Company v. Frederick Nicolai.

### Gen. No. 11,168.

1. DECLARATION—*when a, in an action on the case for nuisance, is sufficient after verdict.*  A declaration in an action on the case alleging the maintenance of a nuisance is sufficient after verdict, notwithstanding it does not allege that offensive odors permeated the air on plaintiff's premises, where it does allege that the odor from such nuisance has caused much sickness in the immediate vicinity of plaintiff's property and that plaintiff's family have been sick because thereof.

2. EXCEPTIONS—*necessity to note, in bill of exceptions.*  Notwithstanding a stipulation may have been entered into, which appears in the bill of exceptions, to the effect that objections and exceptions may be deemed to have been preserved to certain evidence, without the formality of saving them at the time, yet it is necessary that such objections and exceptions should be noted in the bill of exceptions precisely as though no such stipulation had been entered into.

3. NOXIOUS ODORS—*what not license to create.*  A receipt set forth in full in the opinion, acknowledging payment of money in consideration of which a license is given to maintain a certain plant and manufacturing institution, held, from its language, not to confer a license to create noxious odors, even if such a license could be conferred by any language (which is doubtful).

4. ABSTRACT—*what, should show.*  An abstract should be sufficiently full to enable the court to determine the point raised by reference to it and to it alone, and where this is not the case the court is justified in refusing to pass upon a point.

Action on the case for damages arising from the maintenance of alleged nuisance.  Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.  Heard in this court at the March term, 1903.  Affirmed.  Opinion filed February 25, 1904.  Rehearing denied March 14, 1904.

OLIVER & MECARTNEY, for appellant.

MASTERSON & HAFT, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

April 10, 1900, appellee commenced an action on the case against appellant and others, which was subsequently dismissed against all defendants except appellant, and such proceedings were had in the cause that appellee recovered

judgment against appellant for the sum of $500, from which judgment this appeal is taken.

It is averred, in substance, in the plaintiff's declaration, that the defendant, prior to the commencement of the suit, caused to be deposited on lots 4 and 5 in block 40 of the Canal Trustees' subdivision of fractional part of S. E. ¼ of Sec. 21, Town. 39 N., R. 14, E., etc., a large quantity of poisonous, rancid, injurious matter, which emitted a foul, obnoxious and injurious odor, intending thereby to injure plaintiff and deprive him of the use and value of his sublots 2 and 3 of block 6 in the same subdivision, and permitted said matter to so remain for a long time, etc.; and that the substance so deposited and the odor emitted therefrom had caused the death of a large number of horses belonging to the defendant, and have caused a great deal of sickness in the immediate vicinity of the plaintiff's property, and plaintiff and his family have been sick, sore, etc., as a result of the presence of said substances, and by reason thereof the utility and value of plaintiff's property have been greatly diminished.

Appellant pleaded the general issue.

The location of the premises in question is shown by the following plat:

PART OF CHICAGO
SHOWING LOTS 10, 11, 14 BLOCK 25
AND 2, 3, 4, 5 & 15 BLOCK 40.
CANAL TRUSTEE'S NEW SUBDIVISION OF BLOCKS
IN S.E. FRACTIONAL ¼ SECTION 21.
Scale 1in = 100ft.

Blackwell and Purple streets are north and south streets, and Eighteenth street and the streets parallel therewith are east and west streets. Appellant's factory extends from Eighteenth street on the north to Twentieth street on the south, and from Blackwell street on the west to Wentworth avenue (not shown on the plat) on the east. The shaded parts north and south of Twentieth street indicate the places where it is claimed appellant deposited the substances mentioned in the declaration. Appellee is the owner of sub-lots 2 and 3 on the south side of Twentieth street, fronting that street, and opposite the shaded space north of Twentieth street. Sub-lot 2, the most easterly of the sub-lots, is twenty-four feet west of the shaded space south of Twentieth street. Sub-lots 2 and 3 are, together, forty-nine feet in width by 100 feet deep. Appellee has lived in a house on sub-lot 2, known as number 261 Twentieth street, for forty-seven years, and rents out sub-lot 3, known as number 263. Appellant has been engaged in the manufacture of soap at its factory, located as above described, for many years. The shaded part north of Twentieth street will be referred to as the north lot, and the shaded part south of that street as the east lot. The material deposited on the north and east lots was soap-stock, which is thus described by John A. Kyle, an analytical chemist in appellant's employ: "The substance commonly known as soap-stock is a precipitation that is obtained in the refining of crude cotton seed oil. The crude oil is taken and put into agitators and mixed with a solution of caustic soda, and the soap and coloring matter precipitates, under suitable conditions, and settles to the bottom of this machine, and they draw the clear off the top, and the sediment is the soap-stock." The soap-stock was contained in barrels varying from two to three feet in width. One witness testified that the capacity of the barrels was about 400 pounds. Kyle, appellant's witness, testified that there were 2,600 barrels stored on the north lot in the spring of 1900, and that the greatest number of barrels stored on the east lot, at any one time, was 7,000. Other witnesses testi-

fied to a much larger number of barrels having been stored on the east lot. Both lots were fenced in and the barrels were placed in tiers on the lots. All soap-stock was removed from both lots by September 20, 1900.

There was evidence tending to prove that the barrels were leaky and were sometimes broken, and that quantities of their contents, which was semi-fluid, ran out on the ground. The main contest on the trial was as to whether the odor proceeding from the soap-stock was or was not offensive, and on this question the evidence was so conflicting as to be irreconcilable, a number of witnesses for appellee testifying that the odor was exceedingly offensive, so much so as to produce nausea and temporary sickness, while a large number of witnesses for the appellant testified that the odor was not offensive to them, some of them even testifying that they could not perceive it at all. The appellee put in evidence the pleadings, master's report and decree in a chancery suit entitled Frederick Nicolai v. The N. K. Fairbank Company, in respect to which it was stipulated as follows: "It was, thereupon, stipulated by all parties that the parties to this proceeding, and the property involved, are the same as those in the proceeding wherein the pleadings, master's report and decree offered in evidence were filed." The bill was for an injunction to restrain appellant from storing soap-stock near to appellee's premises, the complaint being substantially the same as in the present case. The decree, after confirming the master's report, finds, among other things, as follows: "That the defendant uses large quantities of soap-stock; that for two and one-half years prior to filing of bill it rented and occupied the east lot, which is about thirty feet east of complainant's premises, for the storage of many barrels of soap-stock; that the said soap-stock barrels were not all made tight and secure against the action of the elements, and that on being exposed to the sun many barrels warped, came apart and became broken, so that the contents of the barrels, to a large extent, flowed out upon the ground; that said soap-stock when so exposed emits a strong, rancid,

oily smell, which is offensive and at times so strong as to make complainant's house an unpleasant place to live in, and at times to be nauseating, and that it has produced sickness to the stomach on part of complainant's family and others in the neighborhood; that said odor is so strong and offensive that no person ought to be compelled to endure it."

The ordering part of the decree is as follows: "It is therefore ordered, adjudged and decreed that the injunction heretofore granted be modified to conform to this decree and that said defendant, N. K. Fairbank Company, and its officers, agents, servants, solicitors and attorneys, and each and all of them, be, and they are, hereby perpetually enjoined and restrained, and hereby commanded to desist from in any manner storing or maintaining, on the two lots by this decree found to be employed by them for the storage of said soap-stock, soap-stock in barrels or other receptacles which are not tight and sound or which will permit said soap-stock to escape upon the ground and emit an odor in such a manner as to be obnoxious and offensive to the complainant and his family or any or either of them, or from attempting so to do."

The contentions of appellant's counsel are as follows:

1.   The declaration is insufficient, in not alleging that the offensive odors permeated the air on appellee's premises; citing a form given by Chitty. It cannot properly be said of the declaration that it does not substantially state a cause of action. It is, perhaps, not as scientifically drafted as it might be; but there are no defects in it insusceptible of cure by verdict. It alleges that the odor has caused much sickness in the immediate vicinity of plaintiff's property, and that plaintiff's family have been sick because of it.

2.   Appellee was permitted to introduce evidence as to conditions which existed, and as to damage suffered after suit commenced. Henry Beahm, witness for appellee, testified October 17, 1902, that he had visited appellee at his residence six or seven times since the spring of 1900, when the following occurred: " Q.   When did you last visit Mr.

Nicolai?  A.  This week.  Q.  State whether or not you observed any odor coming from that lot, or any of his property, at that time." Counsel for appellant objected to this question, as relating to a time subsequent to April 10, 1900, when the suit was commenced, but the court overruled the objection, and the witness answered: " There was some odor there this week." The word "lot" in the question, evidently, as we think, refers to the plaintiff's premises and not to the north or east lot. The words are " odor coming from that lot, or *any of his premises.*"

The question may have been irrelevant, but could not have misled the jury, because the uncontradicted evidence was, that by September 20, 1900, two years before the time the witness testified, all soap-stock had been removed from the vicinity of appellee's premises. It was stipulated between counsel, on the trial, that objections might be made and exceptions saved to all testimony of the acts of the defendant, or conditions existing after the commencement of the suit, without repeating the objections, or formally saving exceptions to the ruling of the court; but no exception to such acts or conditions, except that to the ruling above mentioned as to Beahm's testimony, appears in the bill of exceptions. While, under the stipulation mentioned, it may not have been necessary to express formally objections and exceptions, as the trial proceeded, the stipulation did not have the effect of excluding the necessity of noting exceptions in the bill of exceptions. It was still necessary, if appellant's attorney desired to preserve an exception, for this to appear in the bill of exceptions. By the statute exceptions may be taken to the giving or refusing law instructions at any time before final judgment; nevertheless, it must appear by the bill of exceptions that an exception was taken at the time the alleged erroneous ruling was made. Hake v. Strubel, 121 Ill. 321, 326.

3.  The verdict was against the weight of the evidence. We cannot sustain this contention. We think the verdict warranted by the evidence.

4.  Appellant put in evidence a receipt from appellee to

appellant of date August 11, 1897, for the sum of $1,000, expressed to be in settlement of claims involved in three suits by appellee against appellant. The receipt contains this language :

"In consideration of said payment of one thousand dollars, we, the undersigned, being the owners of the following described real estate, to-wit:  Sub-lots two (2) and three (3) of the subdivision of lot six (6) in block forty (40) of the Canal Trustees' Subdivision of the east fractional part of the southeast quarter (S. E. ¼) of section twenty-one (21), township thirty-nine (39) north, range fourteen (14) east of the third principal meridian, in the county of Cook and State of Illinois, and otherwise known as numbers 261 and 263 East Twentieth street in the city of Chicago, as such owners of said premises last hereinbefore described for ourselves, our heirs, executors, administrators and assigns, do hereby give and grant to said The N. K. Fairbank Company, its successors and assigns, the right to, and we for ourselves, our heirs, executors, administrators and assigns, hereby consent that said The N. K. Fairbank Company, its successors and assigns, may henceforth forever operate and conduct its said plant, buildings, machinery and property at the present location thereof, to-wit:  In the vicinity of Eighteenth and Blackwell streets in the city of Chicago, State of Illinois; provided, however, that it is not the intention of the grantors herein to grant to said The N. K. Fairbank Company, its successors and assigns, the right to conduct said business in any manner more burdensome to said grantors, their heirs, executors, administrators and assigns, than is the manner in which said plant, buildings, machinery and property are now conducted."

Counsel for appellant say :  "It is, therefore, clear that if the odors complained of were not more burdensome than those which existed at the date of the granting of the license, appellee was not entitled to recover at all." We do not concur in this construction of the language quoted. It contains no agreement that appellant might create offensive odors, if, indeed, appellee could legally make such agreement, and so the master found, and the court approved the finding in the chancery suit. Appellant offered no evidence as to conditions in August, 1897, when the receipt was executed, but the evidence for appellee shows

that the soap-stock was all taken out by September 1, 1897, and the premises were free from it for about three months from that time.

5. The court erred in admitting in evidence the record of the chancery suit hereinbefore mentioned. When this record was offered in evidence, appellant's counsel objected that it was incompetent, irrelevant and immaterial, and that it did not relate to the state of facts which existed prior to the commencement of this suit, and that the offered evidence did not contain all of the decree. The record, apparently, contains the entire decree. Appellant's counsel are not in a position to object that the chancery record does not relate to matters existing prior to the commencement of this suit; because neither the record nor the abstract shows the date when the bill, or any of the pleadings, was filed, nor the date of the decree. The decree, however, refers, in express terms, to conditions existing prior to the bringing of the present action. There was no error in admitting the evidence.

The judgment will be affirmed.

*Affirmed.*